The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Next case this afternoon is 4-24-0306, Allenbaugh v. City of Peoria. Counsel for the appellant, please state your name for the record. Yes, Jennifer Bonestell, Your Honor. Thank you. And counsel for the appellee, please state your name for the record. David Watts, sir. Thank you. Okay, Ms. Bonestell, on behalf of the appellant, you may proceed. Thank you, Your Honor. First of all, it's a pleasure to be back in front of the court, even via Zoom. I'd like to thank you on behalf of myself and, more importantly, my client, Josh Allenbaugh, who's been waiting for this matter to be heard and for his rights to be declared. More particularly, I'd like to thank this court for a shorthand remedy where prior there was none. As you may or may not be aware... Oh, sorry. Did someone say something? Go ahead. Okay. As you may or may not be aware, after the filing of this case, we faced several motions to dismiss at the trial court level before reaching the summary judgment phase, wherein the trial court ran to the defendant's motion for summary judgment on the basis of a failure to file a grievance. Up from that time until the present date, we had, both myself and Mr. West, a lot of cases involving grievance claims, deck actions, but we really didn't have a case that involved a declaratory judgment action with a failure to file a grievance in conjunction with a state statute that was being requested to be interpreted that was not distinctly and explicitly part of the CBA issue. And more particularly, we didn't have anything about PETA. That was remedied August 5th, 2024, when this court, through Justice Darman, as well as Justices Harris and Zedoff, issued its opinion in Bittner and Brooks v. the City of Beacon, 2024 Illinois Health Court, 230718. While I realize that that case, the Bittner case, has actually been appealed to the Supreme Court, so it's not mandated at the moment, I believe it provides a lot of guidance for what we're... and context for what we believe should happen in this case. In this case, as in Bittner, both my client and Mr. Bittner, although not Mr. Brooks, were union employees injured in the line of duty who'd been declared unable to work. Both are bound by a CBA through their respective employers. Both were denied their rights under PETA and filed declaratory judgment actions seeking to have their rights declared by the statute. Both ended up before this court via different trial court outcomes, to be sure, asking that this court declare their rights under PETA. Replete in the case law, there is a clear theme that a CBA's control over an issue, whether state statute or not, must be explicitly spelled out in the terms of the CBA because a CBA is a contract. That was the case in 14 Penn Plaza, 566 U.S. 247 in 2009, Emerald Casino, 346 Illinois Health 318 in 2003, along with its dissent. Counsel, I have a question. When you say must be specifically spelled out, didn't the CBA in this case have language specifically referring to the PDA? Actually, I'm really glad that you asked that. It has one sentence in Article 34.1, saying, and I quote, whenever any employee suffers any injury or illness in the line of duty, which causes him to be unable to perform his duties, he shall continue to be paid by the city in the manner and to the extent provided and required by 5 ILCS 35-1, which is the PETA statute, the Workers' Compensation Act, and any other statutes applicable on the effective date of this contract. That is the only sentence that mentions the PETA statute. And in fact, it's just a recitation of the fact that you have rights under those statutes that are not controlled or the source of the CBA, that the CBA has no doings with those. I'm not sure how this works. Couldn't it be part of the CBA for the parties to be cognizant of the PDA and as part of the collective bargaining, figure out how that should be handled with regard to their CBA? I don't believe so, Your Honor, and here's why. It says that they're going to apply those rights as they are in training statute. It's not saying, it's not altering the language. It's not saying that the arbitrator will have control or the ability to look outside the statute to those articles or to those statutes. In fact, outside the CBA to those statutes, I apologize. In fact, actually Article V explicitly states that in the arbitrator's purview, a grievance is a dispute or difference of opinion concerning the meaning or interpretation of specific provisions of this agreement or established past practice. It does not claim that the authority of the arbitrator extends to looking outside of the CBA to determine what the law says. In fact, I think without something more explicit, like in 14 Penn Plaza, you're going to have an issue with whether or not the arbitrator has control. In 14 Penn Plaza, that case, Justice Thomas wrote that one of the reasons that there was actually control by the arbitrator to look at the ADEA, sorry, all these acronyms, was the fact that in that statute, it specifically said that the arbitrator had the right to look over the ADEA. It was specifically enshrined in that arbitration agreement. That was part of their employment contract, and that was part of the things that would be briefed. So- As part of the selective bargaining process, couldn't the association and the city have agreed to procedures which would have been different than what the PDA provides? They actually, yes, absolutely they can, and we're not disputing that they could. We're just saying in this particular instance, they did not. Well, see, now that's the problem. Selective bargaining agreements are supposed to be thorough and complete documents, and this would be a different case if there was no reference to the PDA at all, and the argument is, gee, somehow everyone overlooked it. But here there's a reference to it. So I suppose my question would be, expand upon, in your opinion, what the CBA could say further with regard to the PDA so that the CBA would be the sole reference for any problem or dispute or injury that Officer Allenball suffered. Well, I actually think that one of the first things they could have done, which would have been a really simple fix, would have been to use language that mimics the PETA statute and says something like suffers an injury in the line of duty that makes him unable to perform his duties in terms of what that next sentence is. Yes, I realize I say that in the sentence, it's enshrining the rights of PETA, but actually when you go to the rest of Article 34.1- Isn't that what the PDA already says, Counsel? I mean, that's the definition. Yes, that's what PETA says, but that's not what the CBA says. Well, to be more clear, my question is, by referring to the PDA, isn't that referencing incorporating the terms under which the PDA applies without having to set forth those terms? I don't believe so, Your Honor, because it says that essentially it is going to be paid and applied as required, as provided for. So the city is already doing that. There's no part of the CBA that has control over that. And then the second sentence, or the rest of the paragraph, goes on to use this IOD term that is used periodically throughout the CBA and which refers to something separate and distinct from PETA or from more COP. More importantly, Your Honors, oh, sorry. Go ahead. But aren't we essentially here, you're disagreeing about your client's compensation, and that is under the terms of the collective bargaining agreement. There's a specific provision on that. So why wouldn't that all be subject to grievance? Well, actually, Your Honor, it is a number, it is about his actual benefits as well. And those benefits are not listed in this CBA. Those benefits are provided for and are sourced from the PETA statutes. Which is referenced in 34.1. It is a sentence basically reciting, and that's what the case in right says. Essentially, the recitation should not be considered to alter or to bring in the terms of the statute when it's just reciting other laws that apply. But how do we rectify that? Because haven't you read numerous statutes that they're outlining something, and then it references another statute. It doesn't outline it, and then you have to go look up that other statute to see what that means. So how is this any different? Well, the difference would be, Your Honor, is that you won't have the ability as justices of the state of Illinois to do that. You have the ability to go look at another statute and reference it and pull it in. The arbitration provision, the CBA under Article V, specifically prohibits the arbitrator from doing that. He cannot look at other meetings. He cannot look outside of this document. So if it is not in the four corners, it's outside of his realm. Let me ask you, Counsel, if the first sentence of 34.1 were just lined out before it were signed by the parties, didn't exist, would it affect your suit at all? Would 34.1 impact your suit? I don't believe so, Your Honor. That's the point. I think injured on duty is something distinct and separate from workers' comp or from. You mentioned that the one-year period for IOD, you think that's referring to terms within the CBA. No. You don't think that's referring to the one-year time period in the statute? I do not, Your Honor, and here's why. If the terms, if the recitation of 34.1 is taken the same fashion, when it says, I'm sorry, I apologize. When you're talking about the rest of it, when it says IOD, it says things like full police duty. It says things like light duty. Those are things that you cannot be on while you're on. That's the point. The CBA says IOD and then says, well, if you can't schedule your vacation time during the year and you're on IOD, well then you can get paid out theoretically, implying that you can, in fact, schedule your vacation time while on IOD, which doesn't make sense because you have, under PETA, vacation benefits that you're actually not supposed to ever have subtracted from. I think this IOD refers to a third type of injury, one that is not enshrined under workers' comp and one that is not enshrined under PETA. And that would be someone who's injured on duty, but not in the line of duty and not in the course and scope of their employment. A good example would be the Noonan versus Illinois workers' compensation commission case where the guy falls out of his chair, reaching for his pen. He's on duty. He's working. He's on the clock, but the workers' compensation commission found that no, in fact, this is a separate injury. This doesn't rise out of the course and scope of your employment. This is something that can occur to anyone at any time. So it's not a workers' comp. And it is easily foreseeable why a union would say, maybe give that guy an extra day if they're showing up to work still. So I think there are examples like there's a Caterpillar case. I couldn't think of the, I couldn't find, but it's a workers' comp where the guy falls over the curb. Same deal. He does not qualify for workers' comp. He does not qualify for PETA. Injured on duty is giving those people an extra benefit because they don't have rights enshrined in statutes like the other people do. That's the point is that there's injured on duty and we think it means something different. And unfortunately there's no definition. PETA is not defined. IOD is not defined in the DBA as being the same as PETA, even though the city tries to use it interchangeably. IOD also does not have the same definition as workers' comp, which brings me to another point. If 34.1 brings in the PETA statute and forces you to grieve it, does it also bring in workers' comp and force you to grieve it? It mentions the workers' comp statute. It mentions it as much as the PETA statute. And in fact, actually it might mention it a little more because medical payments are not guaranteed under PETA, but workers' comp payments are. But doesn't workers' compensation determine whether or not there's a compensable injury? That's the purpose of the workers' comp. That's the purpose of PETA too. That's the point is that these statutes have their own authority, their own separate, distinct protections for these people. And the first line of 34.1 is just a recitation that, hey, we recognize those protections are out there. This is not altering it in any way. This is referring to yet another subset of injuries. So you're familiar with the recent decision of this court, Bittner versus City of Pekin. Yes, Your Honor. How do you think that decision affects your case and what this court should do here? Well, Bittner says very plainly, Your Honor, that no, if you're asking the rights to be declared under PETA, you don't have to grieve it. That's the first primary holding. That's the exciting part of that case for me. Say that again, if you would. Bittner says what? Bittner says, if you want to have your rights declared under PETA, you do not have to grieve it. It's separate and distinct. That's what Bittner says. Now, unfortunately, Bittner kind of takes a separate part of our claim in terms of taxes, saying that if we didn't bring a separate statute up, we can't ask the right to declare that PETA is tax-free. That's another claim that we made in this case. That would be something that we would hope to bring up on remand if the court were to remand it down to the trial court. The main takeaway is that a union employee does not have to grieve to have their rights declared under PETA. PETA is a statute. Wasn't one of the plaintiffs a non-union employee? Brooks was, but actually the court found that both Bittner and Brooks did not have to grieve the matter. Bittner was a union employee. The court said actually in their case, because Bittner tried to argue two different statutes of limitation, one based on a contract and one based on the PETA statute, and the court said not so fast. You can't have it both ways. If you're claiming that PETA applies, there's a five-year statute limitation. If you're claiming contract applies, yeah, it's a 10-year. But also you've said that you don't have to grieve it because you're not abusing the contract. So they held them to the five-year statute limitations because the court agreed. They did not in fact have to grieve the matter pursuant to a CBA. Go ahead.  It's interesting. One other thing in Bittner actually that I took a note on was that this court spelled out what is the determination for whether or not you have to grieve the matter. And it said, could plaintiff's pleading be construed as a breach of contract claim, paragraph 25. Josh Allenbaugh cannot use the CBA to request that he gets paid back vacation time that was taken away wrongfully or sick leave or personal injury. He also can't use it to declare what is a line of duty injury, because that is under PETA. That line of duty is not using the majority of the article 34.1 defining what IOD is. Doesn't use line of duty, doesn't use disabling injury. So you'd have to look to PETA and its case law in order to look at this. So if Josh Allenbaugh wants a remedy, he can't bring that remedy on the CBA. Let me ask another question. Are you arguing that section 34.1 is invalid or unlawful?  Okay. Article 34.1 is actually a valid thing. We're not saying it doesn't apply. We're not even saying that Josh Allenbaugh under other terms is not bound by the CBA. We're saying for this particular issue, the first sentence of article 34.1 is just a recitation of his rights that is being not disturbed, not altered, not changed. And that the rest of the statute, the rest of that article 34.1, is actually talking about a third injury. We're saying article 34.1 applies. It just doesn't apply to him. He's under COMP, he's under PETA. Those are things that are not under that part of the statute. They're different. Go ahead. I was going to ask, it sounds like you believe that the agreement could not bargain away any of his rights under the statute. I do not believe that, Your Honor. I actually think that they could, in fact, bargain away rights if they chose to. I'm looking at the complaint, which seemed to say that. But would you have a position on whether it did bargain away any of his rights under the statute, including any procedural rights? I don't think it did, Your Honor, because of the curtailing of the arbitrator's rights. That's what 1410 Plaza is about, is the idea that you can bargain away certain rights, and more importantly, you can bargain away a judicial procedure. So you can decide and opt for grievance versus judiciary, but it has to be explicit. And that's the point, is that they can do that, but they have to make it explicit. And if it is in any way ambiguous, it will be deemed not to have waived those rights. And again, if we lined out the first sentence of 34.1, it would have no impact on your client at all? No. I have a question, counsel. Let me ask it this way. Let's assume hypothetical in which Alan Ball filed a grievance against the city, asserting the exact same arguments he made to the trial court on appeal and the grievance, could the grievance process have fully authorized the arbitrator to consider Alan Ball's arguments and resolve the dispute in his favor if the arbitrator agreed with those arguments? I don't believe so, Your Honor, because those benefits are not listed. So he would have to look at the statute and his authorities curtailed under the first part. It says it has to be an interpretation of this CBA. That is what the arbitrator is limited to, is the four corners of this document. So the fact that he would go outside the statute, and not that it really matters for this purpose, but my client did ask after we'd already filed, and they said, no, we're not going to hear that because it's not what we do. Again, sorry, not that it matters, but I know that Joshua won't let me get that in. The point is that the arbitrator would be bound and he would say, well, that is an external statute and I can't look at it. So I'm so sorry, Your Honor, you'll have to take it up with the board. Let me ask this one last question. Your time is up. I'm interested in your response. Doesn't the CBA expressly state that the city would comply with the PDA when required, incorporating the PDA by reference, and couldn't the arbitrator have considered that argument and provided benefits under the PDA? Well, technically, Your Honor, it doesn't say we're going to require this under the CBA, or it doesn't say anything like that. It says as provided and required by the law, and any other statutes applicable. So in other words, it's not saying if PDA applies, you can bring it in. It's saying, hey, all these other laws out there will still apply. Okay. Thank you, counsel. Your time is up. Mr. West, on behalf of the EPA. Thank you, Your Honor. Thank you. If it may please the court, on behalf of the city of Peoria, we respectfully request that this court enter an order upholding the summary judgment granted by the Peoria County Circuit Clerk, dismissing Mr. Allenbaugh's claims under the Public Employee Disability Act. The substantive issue is whether the city of Peoria correctly calculated the PEDA benefits owed to Mr. Allenbaugh. It believes that in relying on section 34.1 of the collective bargaining agreement, that it did make that calculation correct, gave him an entire calendar year of benefits. And in fact, an additional 60 days, that is required under the section 34.1, which is over and above the statutory requirement. Okay. So what was this? Go ahead. No, you go ahead. What was the CBA drafted or contracted for? What was like the term of the CBA? No. What year was it? The CBA is typically up every three years, Your Honor. The CBA had issue for the injury of Mr. Allenbaugh was the January 1st, 2020 through December 31st, 2021 CBA. When was the PDA enacted? The PDA would be enacted. It looks like it was, they added language after COVID, Your Honor. It looks like the most recent one was in 2021. Prior to that, it was in 2019. Okay. Well, the point is the PDA was in existence when the CBA was negotiated and contracted for. Isn't that right? That is correct. So for those of us who are not in the labor law business, it's just a question I'm trying to figure out here. Given the significance of the PDA, how is it that the CBA has just this offhand reference to it as opposed to going into an expansive discussion about, hey, by the way, this contract takes into consideration the PDA and various rights and  It's part and parcel of what we've agreed to here or worse to that effect. Your Honor, I think the response to that is first, look at the language of section B of the PDA statute, and then look at the first sentence of article 34.1. They are nearly identical, Your Honor. The language of the PDA statute says whenever an eligible employee suffers any injury in the line of duty, which causes him to be unable to perform his duties, he shall continue to be paid by the employee public entity on the same basis as he was paid before the injury. Section 34.1, the city's CBA and the police union CBA says whenever any employee suffers an injury or illness in the line of duty, which causes them to be unable to perform his duty, he shall continue to be paid by the city in the manner and extent provided required by a statutory site to the PDA language. So effectively when they drafted section 34.1, Your Honor, they expressly incorporated the exact same first language, first sentence of the PDA statute. So for us, Here's the problem. And as Ms. Boglesteel has pointed out, we're talking about your request to have this matter subject to arbitration to determine just what rights and benefits the plaintiff, Officer Allenball has. Is that correct? That's what this is about. The dispute is a procedural one, which is was he required pursuant to the exclusive resolution proceedings for provisions on the CBA required to bring a grievance as opposed to going straight to circuit court. That's my point. There there's no grievance provision required in the PDA, is there? If you're not happy, you can go to circuit court, right? No, Your Honor. Illinois has a long case law history of finding and respecting parties abilities to enter into private contracts regarding their statutory or non-statutory rights. I'm not being clear. So let me, let me back off. Let's assume there was no union for the Peoria police. And also Allenball was injured. He could seek relief under the PDA by going, if it's, he doesn't think it's being paid and go directly to circuit court. Could he not? So if I understand the hypothetical correctly, sir, if there was no contractual CBA governing Mr. Allenball's relationship with the city of Peoria, could he go directly to circuit court? And the answer would be yes, but that is not the case, obviously, because there is. Well, you see, that's the whole point. If the, one of the provisions of the CBA is, you know, there's this PDA out there and because of the CBA, among other things, you can't go to circuit court on it. You have to, if there's any disagreement between the parties, you have to file a grievance. That's your position, isn't that? Well, Your Honor, my position is that section 34.1 operates as a gap filler for PETA because the PETA language. That's not helpful. Isn't your position that they have to go through a grievance process and they can't go to circuit court under the PDA directly? It is our position that they must go through the grievance procedure. So here's my question. Why doesn't the CBA say that? It does say that. And the provision saying that. Specifically, it says, by the way, if you're aggrieved under the PDA, you can't go directly to circuit court. The provisions of the CBA govern and you have to file a grievance and get it resolved that way. There's some language in the CBA that says that. I understand your question, Your Honor. And respectfully, that's not what the case law in Illinois requires. If you look at- My question was, does the CBA say that? The CBA, under the exclusive grievance procedure, does not specifically reference PETA. I think the answer to my question, counsel, is no. And then my next question is, why doesn't it say that? And how should this court view the absence of that in the CBA? Yes, Your Honor. So my answer from a contract interpretation or construction perspective as to why it doesn't say that is because when you have two contracting parties to outline every single potential thing under a 60-plus page agreement that would have to be subject to the grievance as opposed to going directly to circuit court would be unwieldy. Having a blanket provision that everything has to go through the grievance procedure is much more efficient from a contract drafting perspective. Counsel, what you just said, you could add a paragraph that says, by the way, all benefits sought by aggrieved officers have to go through grievance procedure and including the PTA can't go directly to circuit court. How long would that take? Your Honor, I don't disagree that if we were to add specific language, as you highlighted, that it would make it more clear. But that's not the standard of contracting that's required under Illinois law. For instance, in the Bartoszewski case, Your Honor. You mean obfuscation is encouraged, Counsel? Is that what you're suggesting? I'm sorry, sir. Obfuscation is encouraged. The lack of clear definitive statements setting forth each party's rights is discouraged somehow? Certainly not, Your Honor. I'm suggesting that there's a body of labor law cases as well as a long history of interpreting collective bargaining agreements as well as employees' rights to pursue grievance procedure as opposed to direct action in circuit court. And that's what is being relied on in the parties. I think oftentimes in collective bargaining, Your Honor, it's between a group of employees, internal individuals working for a municipal entity. There are multiple, probably 10, 20 different things that are being negotiated at any given time. I think if you're saying could there be clearer language in existence, I would say yes. But is that required under Illinois law? I would say no. And specifically direct the court to the attention of the Bartoszewski case wherein in that case there was language in the collective bargaining agreement governing the calculation of overtime. There was also a conflicting ordinance providing other calculations of  In that case, the appellate court in Illinois found that the language of overtime in the contract governed over a conflicting ordinance. It found that the employees, which was a police union, asking for a declaratory judgment, was required to grieve that dispute under the contract and not go straight to the circuit court on the ordinance. Specifically, the language that the court found constituted a waiver of the ordinance rights in that case, Your Honor, did not say, as you're suggesting, we expressly waive the rights under this ordinance and in its place substitute the following. And it did not say expressly that it was required that they first grieve this issue prior to moving forward with circuit court. So that level of specificity in the contract is not required. May I follow up on that answer? What does the collective bargaining agreement in 34 change in either direction the party's rights under the statute? Thank you, Your Honor. The section 34.1 explains the intersection of full duty and light duty work during the time that a person is receiving these PETA benefits. And so under 34.1, it says that the parties agree that one year for IOD or PETA shall be calculated from one year.  Hold on, because that was a big leap right there. You're saying IOD is a PETA concept, not a bargaining agreement concept. Yes, Your Honor. And so as stated, 34.1 expressly incorporates the PETA statute. It says that. That's exactly my point. If it says it will be paid to the extent provided for by PETA, then it isn't adding or subtracting. It's saying there's a statute, we'll pay for that. Maybe it's providing for more. I don't know. But it is not adding to or subtracting from the rights under the statute. Your Honor, I would agree. It's certainly not subtracting from the rights under the statute. I believe that the statute is silent on the intersection between an individual working light duty and whether they continue to have PETA benefits. Does light duty toll the benefits? Doesn't that question in a claim under the statute have to be answered under the statute? Meaning if there was a non-union officer in the same position as Allen Ball who made this claim, that would be a question under the statute. It would have to be answered under the statute. It isn't expressly answered here. Your Honor, the section 34.1 provides, again, a gap on how we apply light duty to the calculation of one year. In addition to that, Your Honor, it does add an additional 60 days of qualification for every two days of light duty work to get additional time. That sounds like you're adding to PETA, not subtracting from it, right? Yeah, we're adding to it. We're not subtracting from it. Let me ask you the same question I asked Appellant's Counsel. If we lined out the first sentence of this section 34.1, would you have a leg to stand on here? I would answer it like this, Your Honor. Our case would be weakened if it was struck out because the first sentence that you're referencing makes it crystal clear. Well, I shouldn't say crystal clear. I don't want to overstate it. In my opinion, and the city's position makes it clear that it's incorporating PETA, and by incorporating PETA, that it means that necessarily any dispute on calculations under PETA and under section 34.1 need to be grieved. By saying that, aren't you saying the very same thing about workers' compensation claims? No, Your Honor. The difference between workers' compensation is that any sort of a claim under workers' compensation would derive solely from workers' compensation. That statute has all the provisions in terms of compensability, in terms of temporary disability, et cetera. Well, if you hadn't contracted anything about this, Allenbaugh's right to be compensated under PETA would derive solely from PETA. How is it any different? Well, we have contracted, Your Honor. We've dropped it 34.1. Well, that's what we're trying to get at, but what have you changed from the benefits permissible under PETA that would require him to go through the grievance process if there's – that would require him to go through the grievance process? What we've done, Your Honor, is clarified how light duty applies to the calculation of the one year. It's silent in the PETA statute as of that. We have filled in the language as to how you calculate light duty versus full duty work. We've also added 60 days of additional benefits over and above. What we've argued in the – Couldn't you grieve that claim if – couldn't he seek his benefits under PETA in the circuit court like any other employee could do and then grieve it if you don't pay the additional 60? No, Your Honor, because it requires – to calculate what amount of PETA he should have gotten requires a consideration of both the additional 60 days as well as the language in 34.1. You can't kind of grieve – like bifurcate the issue, I guess. You can't grieve part of it and then have state law claims and other parts of it. That would – further, Your Honor, part of the reason that there is an exclusive mechanism is for efficiency purposes with the parties. They're trying to resolve things in one location. That's the grievance procedure. So at the end of the grievance procedure, is there any avenue other than what I think is a very limited one of trying to overturn an arbitration decision? There's nothing at the end of the rainbow. This isn't a question of exhaustion. This is going to be the whole ballgame determining his claim. Your Honor, it is correct that it would likely fully be resolved by arbitration. The substantive issue – I mean, we think very strongly that we've interpreted it correctly, but an arbitrator could find from Mr. Allen's interpretation. So the substantive issue would be decided by an arbitrator subject to like a manifest weight or a very high standard of review. Yeah, I think it's much higher than manifest weight. Or a capricious arbitrator. It's almost inviolate. So I think you're done if you go that grievance route. I have a question following up on Justice Daugherty's questions, and I want to make sure I understood your answer. The first sentence, 34.1, as I think he points out, makes reference to two statutes. The first is the PETA statute. The second is workers' compensation. And you said that somehow the reference to the workers' compensation has different effects than the reference to the PETA statute. What do you mean? So, Your Honor, this is directly addressed in the Gelb and Glasper case, and what Illinois case law holds is when you analyze whether the contract or the statute should govern, if the right derives solely from the statute, the statute governs. If the rights derive solely from the contract, the contract governs. If the right is a mix of statute and contract, the contract governs. And so as to workers' compensation, those are all statutorily derived rights. As to PETA, because of the clarification as to light duty, as well as the additional 60 days that are provided for the calculation, this is a mixed, it is a mix between contract and statute, and therefore the contract should govern. Where do the rights afforded Allenbaugh appear in the contract in addition to or exclusive of PETA? So in addition to under Section 34.1, it identifies exactly how light duty and full duty factor into the one year of benefits. It adds 60 days. The other thing, too, Your Honor, is part of Mr. Allenbaugh's claims is that we've somehow administered vacation and sick leave incorrectly. Those are concepts that do not derive from statute, but derive from the contract. And so, again, there are multiple types of benefits that are covered by other contractual provisions, and it's appropriate to refer to the contract to resolve those. Isn't the claim here, counsel, that you can't count those in calculating PETA? So whether you had agreed or not, you cannot count those or diminish the PETA recovery because of those. Their position is you cannot diminish them, and I would agree you're not supposed to under PETA diminish them, but what sick leave and what vacation he even has is a creature of the contract. But why would it matter if you're going under PETA? To resolve whether the city has inappropriately done anything as to the calculation of vacation or sick leave would necessarily need the contract to resolve that. And I get it. Maybe that's plaintiff's fault for referring to calculation, but is it the point you can't count the sick leave when they should be getting one year of payment without counting sick leave? I agree with that statement that that is what PETA says and that is what plaintiff's position is. I think my point is just that sick leave and vacation are not statutory rights. Well, to some extent I suppose sick leave is now, but what's referenced here is a creature of the contract and needs to be decided by an arbitrator. Yeah, as far as that calculation, but as far as the question of whether they can take the place of the rights of PETA, I think that's contractual. It is contractual, yes. I'm sorry, it's statutory. I think, Your Honor, this kind of goes to the Ameren case, which plaintiff cites where there is case law that says so long as you reference an external contract, an arbitrator is free to interpret that external contract and that the circuit court or the appellate court is not its position to overturn its findings based on that interpretation. And so in this situation, under 34.1 expressly incorporates the PETA statute, it would be totally appropriate for an arbitrator to decide how PETA should operate. Does it incorporate it any more than a contract is presumed to incorporate the law, meaning that we have to follow the law, we can't engage in criminal practices, that's not part of our deal? Does it really incorporate it so much as wave at it and say, yeah, we recognize that? And I think it does more than wave at it, Your Honor. I understand it's not like a treatise level dissertation on it, but if you look at the case law, even the Ameren, which we think supports our case, but the Ameren case cited by Mr. Allenbaugh, the court says the arbitrator could wildly get it wrong, but it's not our position to overturn the arbitrator. We respect the party's private right to contract, and we respect the decades-long deference to the arbitration process. If that's what they did. If referring to another statute constitutes an agreement to change the party's rights under the statute. Thank you, counsel. It's not correct, is it? I don't understand. Can you say the question again? Yeah, I'm just saying we have to conclude that the contract somehow altered or affected the party's rights under the statute to accept your argument. I think what I was referring to, Your Honor, was just is there a right? Your time is up. The proceedings would be helpful if you would answer his question. That calls for a yes or no answer. I apologize, sir. And I apologize. Would you like to repeat it again? Sure. Your position depends on us concluding that the collective bargaining agreement somehow altered the party's rights under the statute. That it did more than just point to the statute. So, no, I don't think that our case rests solely on that position. And I'd be happy to speak further on it. Well, your time is up, counsel, and I'm giving you a few extra minutes, as it was. Ms. Bonestell, any rebuttal, ma'am? Yes, Your Honor. Let's start with Justice Doherty's question. In fact, that is their entire argument. They're saying, as Mr. West argued, well, Article 34.1 explains light duty and full duty in conjunction with PETA. PETA does not mention light or full duty. PETA, in fact, says you can't be on light or full duty. It says you have to be unable to perform your duties. So the six months that my client was on light duty, getting regular pay, coming in, showing up, doing all the things he's supposed to do, that doesn't count as PETA. That's the point. These rights that are listed under PETA are not listed under the statute. And you have to assume that the statute or the contract somehow controls these without specifically saying, hey, we're altering the language here, or we're adding this language here. We're using different language that we're adding in, and somehow it still alters PETA. You don't have to look. I can't believe, and I'm sorry, I don't remember if it was Justice Stegman or Justice Doherty who asked this, but one of you asked, well, with regards to the vacation benefits, you know, like, is that under the contract? No, you never have to look at the contract. You know why? If you're supposed to be on PETA, and you have vacation in your pay stub, and then all of a sudden that vacation is removed by the city, that's a violation, and that is what we're saying happened here. My client was off work, and they just took his vacation time. They took his sick benefits. They took his personal time. It's not a matter of looking at what the value of that time is. How are those benefits not under the contract? Because I'm looking at the contract, and it's talking about holiday pay, vacation pay. How is that not part of the collective bargaining agreement? That determines the value, Your Honor, but whether or not they're taken away is not listed under the contract. That's the point. With regards to whether or not the value of those, if we're calculating it and saying, hey, you owe this, hey, you owe this in terms of value, what we're asking is the court should declare their rights. Can those be taken away? Yes or no? That doesn't deal with the CBA. Because it's not about giving the rights, it's about taking them away. It's a negative versus a positive. What relief can the circuit court give on that? I apologize, Your Honor, what did you say? What relief can the circuit court give Mr. How much in the way of benefits you lost? Isn't that something that has to be under the agreement? No, because he could say, if you lost any benefits, PETA has been violated. If they made you work light duty during PETA, PETA has been violated. It's not about looking at the specifics. And, Your Honor, there are replete throughout the records, you will see where they keep telling like the trial court, they haven't given us calculations, they haven't given us numbers. No, because we're asking them to declare our rights. And so the next shoe to drop would have to be a grievance procedure. No, because the problem is, Your Honor, according to, and I looked it up while you guys were talking, section 5.5, the authority of the arbitrator. The arbitrator shall act in the judicial, not a legislative capacity, and shall have no right or authority to amend, modify, nullify, ignore, add or subtract from the provisions of this agreement. He can't add in the PETA language. He can't add in whether or not vacation benefits can be taken away. He can't even look at it. Help me out here. If the declaratory relief is that PETA was violated, I guess that makes your client happy. But how does he put money in his pocket, right? I mean, the only way he becomes whole is if he takes that finding and goes back with a grievance under the contract and says, I'm sure you've got to pay me more. Well, so the thing is, with regards to that, I don't disagree. I think that he has to do something beyond this step. But the whole point, Your Honor, of us filing a DEC action, was this was supposed to be a faster procedure than it was. He's supposed to be asking for declaratory rights so that we don't have to engage in all this litigation. We have now been in litigation for a declaratory judgment for two plus years. Can you have avoided all that by filing a grievance? Well, Your Honor, we actually did talk about whether or not we could file a grievance. Neither he, who was a former member of the union, nor myself based on past experience, believe that the union would take it up because it is, we didn't even bother to ask. And that's why we're not saying we did ask. We're not even saying we should have asked. We don't think the arbitrator could hear it. That's why we brought it in this direction. We weren't doing this to get some sort of extra scope or extra two shots at the language. We're doing it because we believe that the arbitrator cannot hear it. And we would have spent time in litigation that we were hoping to simplify on this end. It just didn't end up that simple. So it was a miscalculation in terms of, but that's where we're at. Your counsel, your time is up. And thank you. And I thank Mr. West for your presentations this afternoon. The court will take this matter under advisement and issue a ruling decision in due course. And we will now stand and recess.